UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| THE HARTFORD CASUALTY INSURANCE COMPANY,<br><br>        Plaintiff,<br><br>  v.<br><br>KENNETH M. MALAVOS, et al,<br><br>        Defendants. | 1:04-cv-6016 OWW LJO<br><br>MEMORANDUM DECISION AND ORDER RE: MOTION FOR RECONSIDERATION OF MAGISTRATE JUDGE'S FINDINGS AND RECOMMENDATIONS<br><br><u>AND</u><br><br>ORDER TO SHOW CAUSE |

## I. INTRODUCTION

This is the first of four cases filed by Plaintiff, The Hartford Casualty Insurance Company, seeking injunctive relief from ongoing or pending arbitrations. The district court rejected Hartford's claims on the merits in the three subsequently-filed cases. *See Hartford v. Valley Pearl Marketing, LLC, et al*, Case No. 1:05-cv-00232, Doc. 25; *Hartford v. S&W Farms et al*, Case No. 1:05-cv-00233, Doc. 22; *Hartford v. Hendricks, et al*, Case No. 1:05-cv-00234, Doc. 23. In this case, however, default was entered against all Defendants before the merits of the case could be reached. Plaintiff applied for

default judgment on October 21, 2004, Doc. 25, while Defendants Alan Cheney, John Schmidt, and Manuel Tavares (collectively "the Growers," unless referred to individually) moved to set aside the entry of default against them on November 10, 2004, Doc. 34.

On December 9, 2004, Magistrate Judge Lawrence J. O'Neill issued Findings and Recommendations, recommending that entry of default be set aside and that Hartford's motion for default judgment be denied. Hartford timely objected. Doc. 51, filed Dec. 23, 2004. After reviewing the entire record, the district court concludes that the Growers' motion to set aside default should be granted and Hartford's application for default judgment should be denied. Also, as discussed in more detail below, Hartford is ordered to show cause why this entire case should not be dismissed.

## II.   BACKGROUND

**A.   The Underlying Substantive Dispute.**

Plaintiff Hartford, a private insurance company, offers federally reinsured crop insurance policies pursuant to the Federal Crop Insurance Act, 7 U.S.C. §§ 1501-08. Doc. 1 ¶ 17, filed July 26, 2004. These insurance policies are written by the Federal Crop Insurance Corporation ("FCIC"), published as administrative regulations, and often referred to as the "Basic Provisions." *See* 7 C.F.R. § 457.8.

The Growers farm apples in California. Doc. 1 ¶ 6. They either purchased or are the transferees of FCIC crop insurance

policies issued by Plaintiff for the Growers' 2003 apple crops.[1] Doc. 1 ¶ 17.  The Growers suffered losses to their apples and submitted claims for these losses to Plaintiff.  Doc. 1 ¶ 18-19; Doc. 34 at 2:1-2, filed Nov. 10, 2004.  Plaintiff denied their claims because it determined that the Growers had not farmed in a "good and farmer-like manner."[2]  Doc. 1 ¶¶ 19-20.  The Growers dispute Plaintiff's determination.

The Basic Provisions contain a dispute resolution provision which calls for arbitration under some circumstances and administrative appeal in others:

> If [the insured] and [the insurer] fail to agree on any factual determination, the disagreement will be resolved in accordance with the rules of the American Arbitration Association.  Failure to agree with any factual determination made by FCIC must be resolved through the FCIC appeal provisions published at 7 CFR part 11.

Doc. 38, Ex. B § 20(a).  The Growers, believing that the adequacy of their farming practices was a factual dispute subject to arbitration, submitted a demand for arbitration to the American Arbitration Association ("AAA") on February 18, 2004.  Doc. 34 at 2:2-4.  The AAA appointed Kenneth Malavos to arbitrate the dispute between Plaintiff and the Growers.  Doc. 6 at 5:6-7, filed Aug. 18, 2004.

Plaintiff objected to the arbitration, claiming that the arbitrator lacked jurisdiction to resolve the good farming practices dispute, and that he lacked authority to decide his own

---

[1] Whether they are the immediate purchasers or the transferees is in dispute and addressed at Part IV.D.2.

[2] The Basic Provisions stipulate that crop losses caused by "[f]ailure to follow recognized good farming practices" are not compensable.  *See* Doc. 38, Ex. B § 12(b).

3

jurisdiction regarding the good farming practices dispute.[3]  Doc. 1 ¶ 23.  Despite Plaintiff's objections, Arbitrator Malavos issued an "interim award" on July 12, 2004, concluding that he possessed authority to decide his own jurisdiction.  *See* Doc. 38, Ex. A.

   Plaintiff commenced this action on July 26, 2004, filing suit to enjoin the Growers and Malovos from proceeding with the arbitration.[4]  Doc. 1 at 8, ¶ 1.  Plaintiff also requests that the court declare the dispute over good farming practices non-arbitrable.  *Id*.

   In addition to the Growers and Malovos, Plaintiff names as defendants two partnerships: Little John Creek Partners and Versalis Ranch ("the Partnerships").  The Partnerships are alleged to be the named insureds under the insurance policies at issue.  Doc. 53 Exs. I and O, filed Dec. 23, 2004.  As discussed at Part IV.D.2, it is not clear that any partnership named "Versalis Ranch" actually exists.  Nevertheless, Plaintiff alleges that the Partnerships were established and are operated by the Growers.  Doc. 1 ¶¶ 6-7.  The Growers deny that they are members of the Partnerships, asserting that the disputed insurance policies were transferred from the Partnerships to them as individuals.  Doc. 57 at 5:5-8, filed Jan. 5, 2005.

///

---

[3] Plaintiff contends that determinations of good farming practices, whether made by FCIC or a private insurer, can only be reconsidered through an administrative process set forth by FCIC. Doc. 1 ¶ 20.

[4] Malovos was subsequently dismissed as a defendant.  Doc. 24, filed Oct. 18, 2004.

**4**

**B.    The Current Dispute Over Entry of Default.**

Plaintiff filed suit on July 26, 2004.  Doc. 1.  After five unsuccessful attempts to personally serve the summons and complaint on the individual Grower defendants (Cheney, Schmidt, and Tavares), Plaintiff attempted to effect substitute service of process on August 31, 2004, by leaving a copy of the summons and complaint with the Growers' secretary at their business office, and then mailing a copy of the summons and complaint to the same location on September 1, 2004.[5]  See Doc. 13 ¶ 3 and Ex. A, filed Sep. 23, 2004.

Assuming the Growers to be partners in the Partnerships, Plaintiff attempted to effect service of process on the Partnerships by personally serving one of the Growers, Alan Cheney, on September 15, 2004.[6]  Doc. 41, Ex. C, filed Nov. 24, 2004.

A properly served defendant must answer the complaint within twenty days of service.  Fed. R. Civ. P. 12(a)(1)(A).  For the Growers, that clock began to run on September 2, 2004, and expired on September 21, 2004.  The Growers filed no responsive pleading by that date.  On September 23, 2004, Plaintiff requested the Clerk of court to enter default against the Growers.  Doc. 12, filed Sept. 23, 2004.  The Clerk entered default the following day.  Doc. 15, filed Sept. 24, 2004.

---

[5] Service of process in this manner is proper under Cal. Civ. Proc. Code § 415.20(b).  See discussion at Part IV.A.

[6] California law permits service of process on a partnership by personally serving a "general partner" of the partnership. See Cal. Civ. Proc. Code § 416.40.

5

Similarly, the Partnerships did not respond by the expiration date of their twenty-day window (October 5, 2004), and the Clerk entered default as to them two days later. Doc. 21, filed Oct. 7, 2004. On October 21, 2004, Plaintiff filed an application for default judgment against all Defendants. Doc. 25.

The Growers claim that they first learned of the entry of default against them on October 20, 2004. Doc. 34 at 2:21-22, filed Nov. 10, 2004. That same day, the Growers, through their attorney, directed a letter to counsel for Plaintiff, requesting that Plaintiff discontinue pursuit of default judgment. Doc. 34 at 2:21-23. Plaintiff apparently did not respond to this letter. Doc. 34 at 2:23-24.

Counsel for the Growers appeared before the court for a scheduling conference on November 4, 2004, and stated that he would file a motion to set aside default by November 5, 2004. Doc. 39 at 3:16-18, filed Nov. 12, 2004. The Growers actually filed that motion on November 10, 2004. Docs. 33-34, filed Nov. 10, 2004. Plaintiff filed an opposition and moved to strike the motion to set aside default as untimely. Doc. 40, filed Nov. 24, 2004.

The motions were submitted on the briefs without oral argument, and the Magistrate Judge issued his findings and recommendations on December 9, 2004. Doc. 50.

**C.    The Magistrate Judge's Findings and Recommendations.**

The Magistrate Judge recommended that the court:

      1.   Grant the Growers' motion to set aside entry of default against them;

6

       2.    Deny Plaintiff's application for default judgment against the Growers;

       3.    Deny without prejudice Plaintiff's application for default judgment against the Partnerships; and

       4.    Deny Hartford's motion to strike the Growers' motion to set aside entry of default.

Doc. 50 at 2:3-8.

Plaintiff filed an objection to these findings and recommendations. Doc. 51, filed Dec. 23, 2004. However, should the district court adopt them, Plaintiff asks in the alternative that it order Defendants to reimburse Plaintiff for the attorney's fees incurred in litigating the issue of default. *Id*. at 13:12-14:2. The Growers filed a response to Plaintiff's objections. Doc. 57, filed Jan. 5, 2005. The Partnerships have filed no pleadings on this matter, and have never appeared before the court in any matter relating to this suit.

### III.   STANDARD OF REVIEW

When a party objects to the findings and recommendations of a magistrate judge, the district court shall review *de novo* the findings of fact and conclusions of law to which objection is made. 28 U.S.C. § 636(b)(1)(C); *Unites States v. Reyna-Tapia*, 328 F.3d 1114, 1121 (9th Cir. 2003) (*en banc*). The court need not review *de novo* any finding or recommendation that the parties accept as correct. *Reyna-Tapia*, 328 F.3d at 1121. The district court may accept, reject, or modify, in whole or in part, the magistrate judge's findings or recommendations. *See* 28 U.S.C. § 636(b)(1)(C).

## IV. LEGAL ANALYSIS

**A. Service of Process.**

**1. Effectiveness of Service.**

The Growers argue that substitute service of process effected upon them on August 31, 2004, was in fact ineffective. Doc. 57 at 3:2-6; Doc. 57 at 4:13.  California law, they contend, does not contemplate substitute service upon individuals (as opposed to corporations or public entities).  Doc. 44 at 4:5-6.

Service of process may be effected "pursuant to the law of the state in which the district court is located...."  Fed. R. Civ. P. 4(e)(1).  California law provides for service of a summons upon an individual person "by delivering a copy of the summons and of the complaint to such person or to a person authorized by him to receive service of process." Cal. Civ. Proc. Code § 416.90.  However, if, after reasonable diligence, the summons and complaint cannot be personally delivered in accordance with Section 416.90, several methods of substitute service are permitted.  Cal. Civ. Proc. Code § 415.20(b).  One such method is effected by leaving a copy of the summons and complaint at the usual place of business of the person to be served, in the presence of a person apparently in charge, and afterwards mailing a copy of the summons and complaint to the same location.  *Id.*

Plaintiff's proofs of service indicate that their process server met all the requirements of Section 415.20(b).  On August 31, 2004, the process server left the summons and complaint at the Growers' business office in the presence of the Growers'

8

secretary. Doc. 13, Ex. A, filed Sep. 23, 2004. The next day, Plaintiff mailed a copy of the summons and complaint to the same address. Doc. 13 ¶ 3. Plaintiff therefore effected substitute service of process upon the individual Grower defendants on September 1, 2004.

### 2. Propriety of Entry of Default.

Section 415.20(b) states that service of process becomes "complete" under its requirements on <u>the tenth day after the required mailing</u> of a copy of the summons and complaint to the address at which the summons and complaint were left. Plaintiff mailed the summons and complaint on September 1, 2004, the day after the server personally delivered copies to the Growers' business address. Doc. 13 ¶ 3. The Growers argue that Section 415.20(b)'s ten-day delay between the required mailing and "completion" of service pushes back the beginning of their twenty-day response window to September 11, 2004. They further argue that the twenty-day window really expired on October 1, 2004, and, therefore, that the clerk's entry of default against them on September 24, 2004, was premature. Doc. 44 at 4:12-19.

The Magistrate Judge correctly rejected the Growers' argument. Despite Section 415.20(b) and its ten-day delay, any party served under a state law method still has only twenty days to reply:

> [U]nder the plain terms of Federal Rule of Civil Procedure 12(a), a defendant has twenty days from receipt of the summons to file an answer unless a federal statute provides otherwise. This is so even if, as permitted by Federal Rule of Civil Procedure 4(e), the defendant is served pursuant to a state law method of service and the state law provides a longer time to answer.

9

*Beller & Keller v. Tyler*, 120 F.3d 21, 25-26 (2d Cir. 1997).

Plaintiff completed all of the requirements of Section 415.20(b) on September 1, 2004, the day it mailed a copy of the summons and complaint to the Growers' business address. The twenty-day clock began to run the following day and expired on September 21, 2004. Entry of default on September 24, 2004, was not premature.

### B.   Timeliness of the Growers' Motion to Set Aside Default.

Plaintiff claims that the Growers' motion to set aside default was untimely: at a scheduling conference on November 4, 2004, counsel for the Growers stated that he would file the motion by the next day, but he did not do so until November 10, 2004. *See* Doc. 39 at 3:16-18. However, the district court did not <u>order</u> counsel for the Growers to submit a motion by November 5; it merely acknowledged his intention to do so. *Id.* Plaintiff received full time to reply and suffered no prejudice. Plaintiff's motion to strike the motion to set aside default is **DENIED**.

### C.   The Growers' Motion to Set Aside Entry of Default.
#### 1.   Legal Standard.

Default judgments are disfavored, and cases should be decided on their merits whenever reasonably possible. *Pena v. Seguros La Comercial, S.A.*, 770 F.2d 811, 814 (9th Cir. 1985). The district court may set aside entry of default "[f]or good cause shown." Fed. R. Civ. P. 55(c). The court's discretion for finding "good cause" is especially broad where (as in this case)

**10**

it considers a motion to set aside <u>entry</u> of default, rather than default <u>judgment</u>.  *Brady v. United States*, 211 F.3d 499, 504 (9th Cir. 2000).

In practice, the "good cause" analysis considers whether: (1) the party in default engaged in culpable conduct leading to entry of default, (2) the party in default has a meritorious defense, or (3) setting aside entry of default would prejudice the non-defaulting party.  *Franchise Holdings II, LLC v. Huntington Restaurants Group, Inc.*, 375 F.3d 922, 925-26 (9th Cir. 2004).  These three factors are considered "disjunctive," meaning that the motion to set aside default may be denied based on any one of them.  *American Ass'n of Naturopathic Physicians v. Hayhurst*, 227 F.3d 1104, 1108 (9th Cir. 2000).  The party in default bears the burden of showing that these factors counsel in favor of setting aside default.  *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 696 (9th Cir. 2001).  Nevertheless, the interest in finality of judgment "should give way fairly readily...[to] the competing interest in reaching the merits of a dispute."  *Id.*[7]

**2.   Analysis.**

The standard set forth above provides three factors for consideration, but the district court may deny a motion to set

---

[7] All three cases cited in this paragraph involve the setting aside of default <u>judgment</u>, rather than <u>entry</u> of default. However, the three-part "good cause" standard that controls relief from entries of default also governs the vacating of default judgments.  *TCI*, 244 F.3d at 696.  The difference between the application of the standard at the two stages of default appears to be the extra measure of judicial discretion applicable to setting aside entries of default.  *Brady*, 211 F.3d at 504.

**11**

aside default based on any one of them. Because the court finds the Growers' conduct "culpable," the court does not reach the remaining two factors.

A party's conduct is culpable "if he has received actual or constructive notice of the filing of the action and intentionally failed to answer." *Id*. at 697.[8] Therefore, the court's analysis focuses on (1) whether the Growers received actual or constructive notice of the complaint, and (2) whether they intentionally failed to respond.

### a. *Notice*.

Actual notice is achieved when the party to be served knows that a summons and complaint has been served upon that party, regardless of whether that party was personally served. *See Pena*, 770 F.2d at 815.

Here, Plaintiff filed suit on July 26, 2004. Doc. 1. On July 29, 2004, Plaintiff mailed a courtesy copy of the summons and complaint to the Growers' attorney. Doc. 5, filed July 30, 2004. The Growers admit receiving notice of Plaintiff's suit by way of this courtesy copy. Doc. 57 at 4:13-14. However, absent

---

[8] *TCI* addressed whether this Circuit's long-standing standard for culpability should to be revised in light of the related holding in *Pioneer Investment Services, Co. v. Brunswick Associates, Ltd.*, 507 U.S. 380, 395 (1993). *See TCI*, 244 F.3d at 697-699. In *Pioneer*, the Supreme Court made it clear that excusable neglect could encompass some <u>intentional</u> failures to act, and explained that a court should determine whether such intentional failures are excusable by examining a number of equitable factors. *Pioneer*, 507 U.S. at 388. Examining the holding from Pioneer, the *TCI* court held that the Ninth Circuit's pre-*Pioneer* standard (receipt of actual or constructive notice and an intentional failure to answer) is still valid, so long as courts interpret "intentional failure to answer" narrowly.

express or implied authorization for one's attorney to receive process on one's behalf, a courtesy copy served upon an attorney satisfies no statutory requirements for service of process and creates neither actual nor constructive notice of the suit. *See Olympus Corp. v. Dealer Sales & Service, Inc.*, 107 F.R.D. 300, 305 (E.D.N.Y. 1985). The Growers state, and Plaintiff does not dispute, that they never authorized their attorney to receive process for them. Doc. 57 at 4:14-15. Therefore, the courtesy copy of the complaint mailed to the Growers' attorney did not put them on notice in a legally cognizable sense.

However, on September 1, 2004, Plaintiff effected substitute service of process upon the growers. The summons and complaint were properly served in accordance with Section 415.20(b) of the California Civil Procedure Code. The Growers admit receiving this copy of the summons and complaint. Doc. 57 at 3:2-4. Therefore, the Growers' had actual notice of the complaint as of the date of receipt.

### b. *Intentional Failure to Respond*.

In the context of a culpability analysis, an "intentional" act is not simply one taken by an actor who knows what the likely consequence will be. *TCI*, 244 F.3d at 697. Rather, the act must evince an intent to "take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process...." *Id.* But, the burden rests on the party seeking to set aside entry of default. He or she must present a "credible, good faith explanation negating any intention to take advantage of the opposing party, interfere with judicial decisionmaking, or otherwise manipulate the legal process." *Id.*

**13**

Under *TCI*, the question then becomes whether the Growers have offered a "credible, good faith explanation" for failing to timely repond to the complaint. They have not. The Growers' argument regarding ineffectiveness of service is not an explanation. Their attorney has never stated that he honestly believed substitute service was ineffective upon individuals and advised his clients accordingly. Even had the attorney believed this, the appropriate response is not to ignore the complaint, but to move to dismiss it for insufficiency of service of process. *See* Fed. R. Civ. P. 12(b)(5).

The Growers do explain that they instructed their counsel to conserve resources and focus on the pending arbitration, but this cannot be considered a "credible, good faith explanation." Where it is clear that attorney and client have conferred regarding a complaint, failure to explain adequately a decision not to answer weighs heavily against the defaulting party in a culpability analysis:

> [T]he defaulting party's <u>general familiarity with legal processes or consultation with lawyers at the time of the default</u> [is often] pertinent to the determination whether the party's conduct in failing to respond to legal process was deliberate, willful or in bad faith. ... Absent some explanation...it is fair to expect that individuals who have previously been involved in litigation or have consulted with a lawyer <u>appreciate the consequences of failing to answer</u> and do so only if they see some advantage to themselves.

*TCI*, 244 F.3d at 699 n.6 (9th Cir. 2001) (emphasis added). However, "legal sophistication or lack thereof is [not necessarily] determinative of whether the culpability standard is met." *Id.*

Based on the information before the court, it appears that

**14**

the Growers have submitted no reasonable explanation justifying their behavior.  Rather, in consultation with their attorney, they intentionally ignored Plaintiff's suit, perhaps in an attempt to avoid the cost of litigation.  This conduct is "culpable" and would normally not be excused.  However, denial of the Growers' motion in this case would create an anomaly.  Because Plaintiff's application for default judgment will be denied, as described at Part IV.D.1, denying the Growers' motion to set aside entry of default would leave the Growers in procedural limbo and have prejudicial effect on the pending arbitration proceedings.

Entry of default may be set aside "[f]or good cause shown."  Fed. R. Civ. P. 55(c).  Given that default <u>judgment</u> may be set aside for "any...reason justifying relief from the operation of judgment," *id*. 60(b)(6), and that the court's discretion for finding "good cause" is especially broad where it considers a motion to set aside <u>entry</u> of default, rather than default judgment, *Brady*, 211 F.3d at 504, "good cause" exists in this case to set aside entry of default.  The Growers' motion to set aside entry of default is **GRANTED**.

**D.   Hartford's Applications for Default Judgment.**

   **1.   Default Judgment Against the Growers**.

Default judgment is not a matter of right.  A court, in its sound discretion, may refuse default judgment where it determines that no justifiable claim has been alleged.  *See Lewis v. Lynn*, 236 F.3d 766, 767 (5th Cir. 2001); *Doe v. Qi*, 349 F. Supp. 2d 1258, 1271 (N.D. Cal. 2004); William W. Schwarzer et al,

**15**

*California Practice Guide: Federal Civil Procedure Before Trial* 6:100 (2005).

The district court has already reached the merits of Plaintiff's underlying arbitrability claims in three recent suits which are essentially identical to this case, all initiated by Plaintiff Hartford and litigated by the same attorneys present here. *See Hartford v. Valley Pearl Marketing, LLC, et al*, Case No. 1:05-cv-00232, Doc. 25; *Hartford v. S&W Farms et al*, Case No. 1:05-cv-00233, Doc. 22; *Hartford v. Hendricks, et al*, Case No. 1:05-cv-00234, Doc. 23.  In these suits, Plaintiff filed complaints (substantially identical to the complaint in this case) seeking declarations that good farming practices disputes can only be resolved through an administrative process.  The district court found: (a) that the insurance policy granted the arbitrator authority to determine her own jurisdiction, including whether good farming practices disputes are arbitrable; and (b) even if the arbitrator did not have authority to determine her own jurisdiction, good farming practices disputes are nevertheless arbitrable under the language of the insurance policy at issue.  Default judgment in Plaintiff's favor is therefore inappropriate.  Plaintiff's application for default judgment against the Growers is **DENIED**.

**2.   Default Judgment Against the Partnerships.**

Plaintiff alleges that the Growers are also members of the Partnerships (Versalis Ranch and Little John Creek Partners). Because one of the Growers (Cheney) was personally served with process as to the partnerships on September 15, 2004, *see* Doc. 41, Ex. C, and because the Partnerships have made no appearance

**16**

in this case, Plaintiff contends that default judgment is warranted at least as to them.

The Growers deny that they have ever been members of the Partnerships and have filed declarations to that effect.  Docs. 45-47, filed Dec. 3, 2004.  Plaintiff has countered with a number of exhibits (e.g., insurance receipts and adjuster's reports) supposedly establishing that the Growers are in fact members of the Partnerships.

With regard to Little John Creek Partners, Plaintiff's exhibits suggest that the Growers may be members of a partnership under that name, although no exhibit unequivocally establishes such memberships.  *See* Doc. 53, Exs. I-N, filed Dec. 23, 2004. With regard to Versalis Ranch, Plaintiff's exhibits establish nothing.  All exhibits in support of the Versalis Ranch claim are directed to the "Mt. Oso Fruit Company."  *See* Doc. 53, Exs. O-R. The name "Versalis Ranch" never appears on any of these documents.

For their part, the Growers explain that they are the legitimate transferees of crop insurance policies originally purchased by Little John Creek Partners and Mt. Oso Fruit Company.  They submit no documentation of their own to support this claim, but rather point to two of Plaintiff's exhibits.  *See* Doc. 57 at 5:1-10.  Both exhibits are handwritten "adjuster's special reports."  In one, concerning Little John Creek Partners, the adjuster writes: "Apparently this ranch has been transferred to new ownership of Cheney, Tavarrez [sic] & Schmidt, with transfer of ins[urance] policy.  Do not have date of transfer at this time."  Doc. 53, Ex. M.  In the other, regarding Mt. Oso

**17**

Fruit Company, the adjuster states: "This ranch has been transferred to Cheney, Tavarrez [sic] & Schmidt."  Doc. 53, Ex. P.

On the whole, the evidence is inconclusive.  Doubt remains as to whether the Growers were partners in Little John Creek Partners, and whether the "Versalis Ranch" partnership actually exists.  In such a situation, further briefing or evidentiary submissions from the parties could be requested.  However, the merits of Plaintiff's claims against the Partnerships have already been decided in the related cases discussed at Part IV.D.1  By virtue of the arbitration agreements, even if the Growers are members of the Partnerships (and therefore have completely failed to respond to the summons and complaint), the record does not support default judgment in this case.  Plaintiff's application for default judgment against the Partnerships is **DENIED.**

### V.   ORDER TO SHOW CAUSE

Plaintiff's underlying claims in regard to arbitrability of its dispute with the Growers have already been rejected on their merits in three similar cases.  Plaintiff is therefore **ORDERED TO SHOW CAUSE** on or before **August 15, 2004** why this case should not be dismissed.

### VI.   CONCLUSION

For the reasons set forth above:
1.  Plaintiff's motion to strike the Growers' motion to set aside default is **GRANTED;**

2.  The Growers' motion to set aside default is **GRANTED**;
3.  Plaintiff's application for default judgment against the Growers is **DENIED**;
4.  Plaintiff's application for default judgment against the Partnerships is **DENIED**; and
5.  Plaintiff is **ORDERED TO SHOW CAUSE** on or before **August 15, 2004** why this case should not be dismissed.

**SO ORDERED.**

**Dated: August 3, 2005**             /s/ OLIVER W. WANGER

_____
                              **Oliver W. Wanger
                              UNITED STATES DISTRICT JUDGE**